Plaintiff sued the defendant, his landlord, to recover judgment for damages allegedly sustained by him as a result of losing his balance and falling down while ascending the front porch steps of the residence leased by him from defendant at 1214 Gilbert Street, Shreveport, Louisiana. He accredited the fall and consequent injury to a defect or rotten place in the lower side, left end, of the riser to the top step.
Plaintiff alleged that at about the hour of 9:45 P. M., March 30, 1946, he returned to his home with his small son, age four, after visiting with his wife, who was then a patient in a sanitarium not far away; that while ascending the steps his mind was preoccupied with his sick wife's condition, and he carried in his arms bundles of groceries, clothing, etc.; that his young son dashed forward ahead of him onto the unlighted porch and he hastened up the steps after him, thinking he might fall and injure himself; that the left toe and front part of the left foot entered the hole in the riser, above referred to, and caught therein; that simultaneously the rotten supports under the left side of the top step settled slightly under his weight; that he fell forward onto the porch, his right leg striking hard against the sharp forward edge thereof, and that in the fall the tibia of the right leg was fractured in two places.
Defendant denies any liability to plaintiff and denies that the accident occurred in the manner alleged. He pleads alternatively, in the event it should be found and held that the steps were defective and that to this condition the accident should primarily be accredited, the following acts of contributory negligence on plaintiff's part, in bar of recovery by him, to-wit:
Using the steps in an abnormal manner, that is, as a runway with his arms full of bundles while aware of the defect therein; and, putting his foot into the opening at the bottom of the riser, notwithstanding, according to his own allegations, he had for some time had knowledge of the existence of the said hole and said defect.
Plaintiff's demand was rejected and he appealed.
It is admitted by plaintiff that the steps were in the same condition at the time of the accident they were in when he and family first occupied the residence, two years prior to the accident. He well knew of the existence of the opening between the riser and the tread of the top step and alleged that the opening was easily observable by all who ascended the steps. He testified that the toe of his shoe went one and one-half inches into the opening.
Plaintiff's testimony fairly well supports the allegations of his petition, a summary of which we have given above, except those to the effect that the steps sank slightly from his weight at the time his foot was caught. He did not positively testify that this happened, but did testify that pictures taken after the accident, and introduced in evidence, showed the steps *Page 353 
to be in the same condition they have been in for two years.
There were no witnesses to the accident except the young son and he was ruled ineligible to testify because of his tender years. Plaintiff also testified that the porch was unlighted and after being hurt he crawled into the house and went to bed. The following morning his condition was such that friends summoned an ambulance that carried him to a hospital.
The learned trial judge reached the conclusion that the accident did not and could not have happened in the manner alleged and testified to by plaintiff. In written reasons for judgment the judge tersely, though forcefully, marshals the pertinent facts. He summarily dismissed, as having no application in the case, the mental distraction doctrine urged by plaintiff in excuse for his own negligence. After a careful study of the record, we have reached the same conclusion as did the trial judge as to how the accident happened, and adopt the written reasons assigned by him to support the judgment rendered herein. Said reasons are here quoted in full, to-wit:
"Plaintiff admits that the condition of the steps was well known to him and seeks to excuse his lack of care by showing that his arms were full of bundles; that his mind was occupied with worry over the condition of his wife, and that his boy had run up onto the porch ahead of him and that he was hurrying to prevent his boy from falling off the porch.
"He was returning from a visit to the hospital, where his wife was recovering from a miscarriage. There is no evidence that her condition was serious. In fact, she came home from the hospital the next morning.
"The porch was only 2 1/2 feet from the ground. Plaintiff testifies that the boy was ahead of him and ran up on the porch up towards the door. If the boy was going toward the door, only three feet away, he was certainly in no perilous position.
"The steps in question — three in number — are clearly shown in the five photographs marked P-1. They indicate that the defect complained of is not a small hole but an open space between the floor board of the top step and the riser from it to the floor of the porch. The opening seems to be due somewhat to the decay of the lower edge of the riser, but principally to the settling of the left end of the step. It widens gradually from right to left.
"Defendant has marked with an 'X' the point where he says his left foot was caught. This 'X' is at almost the extreme left end of the step and at almost the widest point in the aperture.
"He testifies positively that his left foot went into the opening to a depth of 1 1/2 inches. This measured from the point of a shoe, establishes the fact that his foot did not enter the opening more than part way of the toes.
"Judging from the proportions shown in the pictures, the allegation in the petition that the hole was 3 inches wide, and the Court's knowledge of the thickness of a shoe at the toes, it appears impossible for the foot to have caught in the opening as claimed by plaintiff. A foot is not 3 inches thick until well back of the instep. His description of the accident, and the testimony of the doctors, show that the injury suffered was the breaking of the right leg just above the ankle, caused by its striking against the overhang of the floor boards of the porch. He says:
" 'I caught my toe in the rotten place in the steps and tripped. I hit my leg on the top of the porch; on the edge of the floor boards.'
"As stated above, his left toe is alleged to have been caught and his right leg broken. In mounting the steps the feet are placed alternately on each succeeding strip.
"Plaintiff's left foot was placed upon the third, or top step and he is bound to have been in the act of raising his right foot from the second step and placing it on the floor of the porch. All his weight is bound to have been upon his left foot. In this position his left foot was anchored and unless he hopped, plaintiff could not move it until his weight was transferred to his right foot. This was true whether the left toe was caught in the opening or not. He admits that he placed his left foot too far back on the step. We think *Page 354 
this was the proximate cause of the accident. The left foot was placed so far back that his right foot failed to clear the projecting floor of the porch, striking it just above the ankle and breaking the leg.
"This conception of the accident — and no other can be drawn from the facts adduced, shows that the condition of the riser had nothing to do with plaintiff's accident and resulting injury."
Pending this appeal the defendant, Joe R. Maranto, died intestate, leaving a widow, Concetta Maranto, and two children as his sole heirs and legal representatives, viz.: Rose Maranto, of full age of majority and Josephine Maranto, a minor who is without a tutor or tutrix. Through appropriate proceedings provoked by plaintiff, the widow and heirs were substituted as defendants-appellees, the minor through Joseph E.R. Bethard, attorney at law, who was appointed by this court as special tutor and curator to said minor. He accepted the appointment and answered the appeal for the minor, praying that the judgment be affirmed and a reasonable fee for his. services be fixed by this court. The fee is fixed at Twenty-Five ($25) Dollars, and is taxed as costs.
For the reasons herein assigned, the judgment appealed from is affirmed at plaintiff's cost. *Page 465